**Entered on Docket**
**January 26, 2007**
**GLORIA L. FRANKLIN, CLERK**
**U.S BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**



**Signed and Filed: January 26, 2007**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>THEODORE A. KOLB,<br><br>       Debtor.<br><br>ROBERT M. CASSEL, on behalf of this Chapter 11 Estate, and UECKER & ASSOCIATES, INC., Liquidating Trustee,<br><br>       Plaintiffs,<br><br>   v.<br><br>RUTH P. GLOBERSON, FELIX O. KOLB, THEODORE A. KOLB, JONATHAN KOLB, RICHARD KOLB, and DOUGLAS KOLB,<br><br>       Defendants. | Case No. 97-32321<br>Chapter 11<br><br><br>Adv. No.  99-3144<br><br><br><u>Hearing</u><br>235 Pine St., 22d Flr.<br>Dec. 14, 2006<br>2:00 p.m. |

**MEMORANDUM DECISION ON MOTIONS
FOR PARTIAL SUMMARY JUDGMENT
AND TO DISMISS**

-1-

I.    Introduction[1]

On April 26, 2006, the court issued its Memorandum Decision Regarding Judicial Estoppel that describes the background of this lengthy dispute in more detail (the "Judicial Estoppel Decision"). Terms not defined herein have the meanings given in that decision.

The rightful ownership of Ted's share of his father's trust was disputed.  Notwithstanding that dispute, Ted and his siblings, acting as Successor Trustees of the trust, distributed Ted's share (the "Property") to his sons and not to Cassel as representative of Ted's creditors, who turned out to be the rightful owners.

This is an action to recover the Property or its value.  The Successor Trustees and Ted's sons (collectively, "Defendants") previously argued that they were protected from liability because the California probate court approved the distributions and discharged the Successor Trustees.  The Judicial Estoppel Decision holds that they are estopped from raising the probate court orders as a defense in this action.

Defendants now argue that the distributions were properly made in reliance on this court's earlier judgment that Ted's disclaimer of any interest in the Property was valid (the "Disclaimer Judgment") even though the true ownership of the Property was still disputed and had yet to be finally resolved by

---

[1]   The following discussion constitutes the court's findings of fact and conclusions of law.  Fed. R. Bankr. P. 7052 (incorporating by reference Fed. R. Civ. P. 52(a)).  Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated prior to the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23.

-2-

1    the Ninth Circuit.  The court rejects this and other arguments

2    raised by Defendants and holds that the Successor Trustees are

3    jointly and severally liable for the amount of all distributions

4    to Ted's sons, plus interest, and Ted's sons are liable for what

5    they received individually, plus interest.  The court makes no

6    determination on Cassel's claim for punitive damages or his

7    asserted rights to consequential damages and attorneys' fees, and

8    declines to enter any judgment on fewer than all claims pursuant

9    to Fed. R. Civ. P. 54(b) (incorporated by Fed. R. Bankr. P.

10   7054(a)), for the reasons stated on the record at the hearing on

11   December 14, 2006.

12

13   II.  Procedural background

14       After the Judicial Estoppel Decision the court issued orders

15   that among other things permitted Cassel to add the Successor

16   Trustees as named defendants and to file a supplemental complaint

17   regarding the distributions made by the Successor Trustees to

18   Ted's sons.  Cassel's supplemental complaint states (in ¶ 25):

19              This Supplemental Complaint concerns facts
            occurring after the [original] Complaint in this
20          adversary proceeding was filed on April 19, 1999.
            A copy of the Complaint is attached hereto and
21          incorporated herein as if set forth in full.  The
            numbering of paragraphs and the claims for relief
22          herein follows sequentially the numbered paragraphs
            and the claims for relief in the Complaint.
23
         In July of 2006 Defendants filed a motion to dismiss the
24
     Supplemental Complaint (the "MTD").[2]  In October of 2006, Cassel
25

26   _____

27       [2]  The MTD treats the Supplemental Complaint as subsuming the
     original Complaint.  The court will treat the MTD as seeking
     dismissal of both the original Complaint and the Supplemental
28   Complaint.

-3-

1  filed his Motion for Summary Judgment on less than All Claims for
2  Relief under Rule 54(b) (the "Partial MSJ").  The parties filed
3  opposition and reply papers and the motions came on for hearing on
4  December 14, 2006.  Appearances are noted in the record.

5

6  III. <u>Discussion</u>

7      A.    <u>Defendants have not established that the Disclaimer</u>
8            <u>Judgment protects them from liability</u>

9      Ted's sons cannot use the Disclaimer Judgment as a shield
10 from liability.  It is well established that a party who
11 previously obtained funds based on a court order or judgment must
12 make restitution after reversal on appeal, even though the party
13 was entitled to the funds at the time.  <u>See generally</u> <u>Arkadelphia</u>
14 <u>Milling Co. v. St. Louis SW Ry. Co.</u>, 249 U.S. 134, 145 (1919);
15 5 Cal.Jur.3d, App. Review §§ 715, 720; <u>Levy v. Drew</u>, 4 Cal.2d 456,
16 50 P.2d 435 (1935) (under California law the restitution
17 obligation is in the nature of a trust obligation and is without
18 any right of setoff).  Ted's sons have cited no authority to the
19 contrary.

20     The Successor Trustees also have not established that they
21 can use the Disclaimer Judgment as a shield.  They had an
22 obligation to determine who should receive the funds that they
23 held.  Under the Judicial Estoppel Decision they cannot rely on
24 the state court's orders approving their distributions and
25 discharging them.  They must be treated as if they made
26 distributions favoring Ted's sons over Ted's creditors
27 (represented by Cassel) without the protection of those orders.
28     The Successor Trustees claim that under state law, even

-4-

without authorization from the probate court, they had no duty to withhold distributions pending determination of Cassel's appeal. They rely principally on Arluk Med. Ctr. Indus. Group, Inc. v. Dobler, 116 Cal.App.4th 1324, 11 Cal.Rptr.3d 194 (2 Dist. 2004).

Arluk is inapposite. It involved a competition between creditors and beneficiaries, not a dispute among alleged beneficiaries. The majority in Arluk held that in proper circumstances a trustee can make a distribution to beneficiaries without incurring personal liability to unpaid creditors, some of whom may be unknown, because under the Probate Code the trustee's sole duty is to beneficiaries. Arluk, 116 Cal.App.4th 1324, 11 Cal.Rptr.3d 194. That holding has nothing to do with a trustee's personal liability for making distributions to persons who turned out not to be beneficiaries at all (Ted's sons), leaving the true beneficiaries (Ted's creditors through Cassel) with nothing.

The Successor Trustees claim that if Ted's sons had demanded distributions on the strength of the Disclaimer Judgment then they would have had to comply with such demands, but that is not what happened and they have not established that this is the law. The Disclaimer Judgment might have been strong evidence that Ted's sons were the proper parties to receive distributions, but that judgment was subject to reversal on appeal as the Successor Trustees knew. This court had no jurisdiction to authorize the Successor Trustees to make distributions out of Leon's trust estate, and was never asked to do so. The probate court was never told of the controversy or asked to rule on it. The Judicial Estoppel Decision prevents the Successor Trustees from using as a shield the state court orders authorizing distributions and

-5-

1  discharging them.  Cassel has established various theories under
2  which a person who distributes contested funds to the wrong party
3  is liable, as discussed below.

4      The Successor Trustees claim, relying on Glass v. Najafi, 78
5  Cal.App.4th 45, 92 Cal.Rptr.2d 606 (2000), that they are protected
6  because they acted consistent with the Disclaimer Judgment before
7  it was reversed.  That reliance is misplaced.  Glass held that a
8  landlord was entitled to act upon a writ of possession and to use
9  self-help to evict a tenant before the writ was quashed.  Id., 78
10  Cal.App.4th at 50-51.  It says nothing about whether the landlord
11  had to return possession after the writ was quashed.  See id. at
12  48 (issue of possession bifurcated from other issues).  Glass has
13  no bearing on whether the Successor Trustees have to return the
14  distributions, or the value of the distributions, that they made
15  to the wrong parties.  The Successor Trustees have not met their
16  burden to establish a defense to Cassel's claims based on the
17  Disclaimer Judgment.

18      B.    Defendants' liability under Section 542(a) (second and
19            third claims)

20      Defendants argue that any claim under Section 542(a) is
21  barred because it was not expressly reserved in Ted's confirmed
22  Plan.  The court disagrees.

23      The principal economic aspect of the Plan is continuing
24  Cassel's pre-confirmation action, and that action is based in
25  large part on Section 542.  The original Complaint, filed before
26  confirmation, is entitled "Creditor's Complaint to Avoid
27  Fraudulent Transfer, To Recover Property of the Estate and For
28  Other Related Relief."  (Emphasis added.)  It cites Section 542 at

-6-

1  the top of the second page and it argues (second claim for relief)

2  that Ted's disclaimer was invalid.  The claim under Section 542(a)

3  survived confirmation.[3]

4        Section 542(a) provides:

5              542. <u>Turnover of property to the estate</u>

6              (a) Except as provided in subsection (c) or (d) of
              this section [regarding entities without notice or
7              knowledge of the bankruptcy case, or insurance
              companies], an entity, other than a custodian, in
8              possession, custody, or control, during the case,
              of property that the trustee may use, sell, or
9              lease under section 363 of this title, or that the
              debtor may exempt under section 522 of this title,
10             shall deliver to the trustee, and account for, such
              property or the value of such property, unless such
11             property is of inconsequential value or benefit to
              the estate.

12  11 U.S.C. § 542(a).

13        Defendants had "possession, custody, or control, during the

14  case," of the Property.  They knew that according to Cassel this

15  was property of the estate (or, in the language of the statute,

16  that Ted's beneficial interest in assets in his father's trust was

17  "property that the trustee may use, sell, or lease under section

18  363").  They knew that the rightful owner of the Property had yet

19  to be finally determined on appeal.  Yet they ignored Cassel's

20  claims.  The Successor Trustees distributed the Property and Ted's

21  sons received it.  Defendants must deliver and account for "the

22

23  _____

24        [3]  Defendants also argue (in their opposition to the Partial
      MSJ, p. 4:25-26) that by implication Section 542 cannot be used
25    "when property has been transferred in derogation of one of the
      avoiding powers" and that the Plan did not preserve any avoiding
26    powers (e.g., a claim under Section 549).  The court disagrees
      with the premise that the Plan needed to preserve any power to
27    avoid the distributions to Ted's sons, which had not yet occurred
      when the Plan was confirmed.  In any event, Section 542(a)
28    provides an independent basis for recovery of the Property, wholly
      apart from any avoiding powers.

-7-

1  value of such property."

2      Under Section 542(a) it does not matter if Defendants
3  genuinely believed that Ted's sons were entitled to the Property.
4  The statute does not require "actual knowledge" of the true
5  ownership of property but only "notice of circumstances that would
6  cause a reasonable person to inquire further" as to the true
7  ownership of the property at issue.  Matter of USA Diversified
8  Prod's, Inc., 100 F.3d 53, 57 (7th Cir. 1996).  Defendants had
9  notice of such circumstances:  Cassel's adversary proceeding and
10  his appeal from the Disclaimer Judgment.  As the bankruptcy court
11  in Diversified observed, any distribution notwithstanding such
12  notice is at the distributor's "own peril."  Diversified, 193 B.R.
13  at 879 (citation omitted).

14      Nor does it matter that the Successor Trustees, and perhaps
15  Ted's sons as well, no longer have possession, custody, or control
16  of the Property.  Section 542(a) speaks of delivering "the value
17  of such property" so it applies "not just to property presently in
18  someone's possession, custody or control but to property in its
19  'possession, custody or control during the case.'"  Diversified,
20  193 B.R. at 875 (emphasis in original).  Defendants may have
21  divested themselves of the Property but they certainly had
22  possession, custody, or control during the case.  They must now
23  return the value of such Property.[4]

24

25      [4]  Defendants argue that Section 542(a) is inapplicable
   because (a) the statute allegedly only applies "during the case"
26  and (b) the case allegedly ends upon the effective date of the
   plan of reorganization, citing In re Greater Jacksonville Transp.
27  Co., 169 B.R. 221 (Bankr. M.D. Fla. 1994).  Defendants are wrong
   on both counts.
28      What must occur "during the case" is the possession, custody,

-8-

1   The Successor Trustees are jointly and severally liable for
2   the entire amount of what they distributed to Ted's sons, even if
3   they did not receive or benefit from such distributions
4   themselves.  In Diversified a law firm received $125,000 from a
5   Mr. Davis to fund a possible settlement involving him and the
6   company he owned, and after the company filed a Chapter 11
7   petition the law firm retained $14,000 for its services and
8   returned the balance to Mr. Davis, who claimed that the $125,000
9   had come from his personal funds.  That turned out to be wrong and
10  the law firm was held liable for the entire $125,000, not just the
11  $14,000 it had retained.  Diversified, 100 F.3d at 56.

12      Ted's sons are liable for what they received.  They had
13  possession, custody, or control, during the case, of a portion of
14  the Property and they must return what they received or its value.

15      The court will grant Cassel's Partial MSJ on his second claim
16  for relief (in the original Complaint) as against the Successor
17  Trustees as successors to named defendant Hilde.  The court will
18  also grant Cassel's Partial MSJ on the third claim for relief (in
19  the Supplemental Complaint) as against the Successor Trustees and

20

21  or control of property (Diversified, 193 B.R. at 875) not the
    resolution of the Section 542(a) claim.  Nor does the case end
22  upon confirmation.  This case was open when the distributions to
    Ted's sons were made and it is still open today.  Greater
23  Jacksonville held that the period for filing a UCC continuation
    statement was extended until 60 days after the effective date of
24  the plan of reorganization, which was the "termination" of
    insolvency proceedings for purposes of former UCC § 9-403(2) as
25  enacted in Florida.  Id. at 223.  That decision has nothing to do
    with whether a person must return property, or its value, that was
26  in the person's possession, custody, or control "during a case"
    under Section 542(a).  Greater Jacksonville specifically
27  distinguishes "termination" of insolvency proceedings under UCC
    § 9-403(2) from closing a case under Fed. R. Bankr. P. 3022.  Id.
28  at 224.

-9-

1  Ted's sons.

2      C.   <u>Sections 549 and 550 (fourth claim)</u>

3      Cassel argues that the Successor Trustees became transferees

4  of an avoidable postpetition transfer under Section 549 when they

5  "assumed Hilde's role and took possession of property of the

6  probate estate, including the portion which should have been paid

7  to Ted's bankruptcy estate, and transferred it to Ted's sons."

8  Opp. to MTD at 5:14-16.  Cassel asserts that Ted's sons are

9  immediate or mediate transferees from the Successor Trustees

10  within the meaning of Section 550(a)(2).  The court does not

11  decide who is a transferee and whether Sections 549 and 550 are

12  applicable.  Assuming without deciding that Cassel states a claim

13  under those sections, his fourth claim for relief is barred by the

14  two year statute of limitations in Section 549(d).  <u>See</u> 11 U.S.C.

15  § 549(d) ("An action or proceeding under this section may not be

16  commenced after the earlier of -- (1) two years after the date of

17  the transfer sought to be avoided; or (2) the time the case is

18  closed or dismissed.").

19      The Defendants did not raise the statute of limitations until

20  oral argument.  The court's initial view at the hearing on

21  December 14, 2006, was that Defendants had waived this defense by

22  not raising in it their opposition to Cassel's MSJ as required by

23  Fed. R. Civ. P. 56(c) and (e) (incorporated by Fed. R. Bankr. P.

24  7056).  <u>See</u> <u>In re Pugh</u>, 158 F.3d 530, 532-38 (11th Cir. 1998)

25  (Section 549(d) is a true statute of limitation that can be

26  waived).  On further consideration the court is persuaded that the

27  defense of a time bar has not been waived.

28      Courts are not inclined to find a technical failure to raise

-10-

an affirmative defense when the plaintiff had adequate notice of
the defense and was not deprived of the opportunity to respond.
See, e.g., Camarillo v. McCarthy, 998 F.2d 638, 639 (9th Cir.
1993). After the hearing Defendants filed and served a letter
brief (docket no. 239) arguing the limitations issues and inviting
Cassel to respond should he wish to do so. Cassel has filed no
response and has not established any prejudice from Defendants'
lateness in raising their defense under Section 549(d). Cassel
concedes in his opposition to the MTD (pp. 7:25-8:2) that the
Defendants' conduct was revealed on June 23, 2003, and that the
first supplemental complaint was not filed until almost three
years later, on June 19, 2006. Therefore Cassel's fourth claim
for relief is barred by the two year statute of limitations in
Section 549(d).

>        D.   Successor Trustees' liability for breach of trust (fifth
>             claim)[5]

Defendants argue that between the time of the Disclaimer
Judgment and the Ninth Circuit's reversal the estate was not a
beneficiary so they had no fiduciary duty to the estate. That is
incorrect. The estate was always a beneficiary (according to the
Ninth Circuit's binding determination). There were intermediate
rulings saying otherwise, but they were reversed. Defendants may

---

[5] At oral argument Cassel's counsel insisted that Cassel is
suing the Successor Trustees in their personal capacities and not
as trustees. This seems somewhat inconsistent with Cassel's claim
for breach of trust, and possibly his other claims. The court
interprets counsel's comments to mean that, pursuant to the
Judicial Estoppel Decision, Cassel is treating the Successor
Trustees as if they had made distributions without authorization
or, put differently, as if they were not acting in any official
capacity.

-11-

have tried to moot the Ninth Circuit decision by obtaining the
state court orders, but they are judicially estopped from using
those orders as a shield.  As Cassel argues, there is no issue of
mootness both for this reason and because this court can fashion
effective relief in the form of damages.

Cassel has established a prima facie claim against the
Successor Trustees for breach of trust and the Successor Trustees
have not established any defense.  The court will grant the Cassel
Partial MSJ as to the fifth claim for relief.

E.   <u>Defendants' liability for conversion (sixth claim)</u>

"Conversion is any act of dominion wrongfully exerted over
another's personal property in denial of or inconsistent with his
rights therein."  <u>Susumu Igauye v. Howard</u>, 114 Cal.App.2d 122,
126; 249 P.2d 558, 561 (1952).  <u>See also</u> Cal. Civil Code §§ 1712,
1713.  Defendants argue that a plaintiff must establish an
<u>immediate</u> right to possession as an element of conversion, citing
<u>Greka Integrated, Inc. v. Lowrey</u>, 133 Cal.App.4th 1572, 1581; 35
Cal.Rptr.3d 684, 691 (2005).  Defendants read too much into <u>Greka</u>.

<u>Greka</u> states that the elements of conversion include "the
plaintiff's ownership or right to possession of the property <u>at</u>
<u>the time of the conversion</u>."  <u>Greka</u>, 133 Cal.App.4th at 1581
(citation omitted, emphasis added).  <u>See also</u>, <u>Aero Prop's, Inc.</u>
<u>v. Gottlieb</u>, 206 Cal.App.2d 711, 716; 24 Cal.Rptr. 277, 280 (1962)
(it was not conversion to hold collateral until debt was repaid).
As Cassel argues, the bankruptcy estate <u>did</u> have rights in the
Property "at the time of conversion" when the distributions were
made.  The bankruptcy court and District Court did not think so,
but the Ninth Circuit reversed and held that Ted's disclaimer was

-12-

never effective so the Property had <u>always</u> been property of the estate.

Nothing in <u>Greka</u> suggests the opposite. An employee was accused of converting Greka's corporate documents but he stated in his declaration that "he took the documents home at the direction of Greka's chief executive officer" and Greka "presented no evidence to the contrary" so it failed to make "a prima facie showing that [the employee's] possession of the documents is 'wrongful.'" <u>Greka</u>, 133 Cal.App.4th 1572, 1581 (citation omitted). There is no similarity between <u>Greka</u> and this case. Cassel never consented to the Successor Trustees' transfer of the Property to Ted's sons.

Defendants argue that dominion over the Property was lawful at the time so no conversion was committed, citing <u>Kertz v. Paris</u>, 168 Cal.App.2d 67, 335 P.2d 154 (1959). That case involved some laundry equipment that had been left on the premises by evicted lessees and that was used by subsequent lessees and eventually sold by them. The evicted lessees sued the landlord, who was held not liable for conversion. The court stated:

> In a very similar case, it has been held that a lessor who secures possession of the leased premises upon default by the lessee in payment of rent, and transfers possession of the premises to one who takes and holds with notice and knowledge of lessee's rights in the furnishings, is not liable to the lessee for a tortious conversion of the furnishings by the lessee, <u>in the absence of a showing that the lessor participated in the conversion</u>.

<u>Kertz</u>, 168 Cal.App.2d at 70 (citation omitted, emphasis added).

In this case the Successor Trustees did participate with Ted's sons in the conversion. They exercised dominion over the

-13-

Property that was inconsistent with the rights asserted by Cassel.

Defendants also cite <u>Pullin v. Allen</u>, 37 Cal.App. 218, 173 P. 772 (1918). That case involved a fee dispute in which the attorneys withheld $500 to which they claimed they were entitled. <u>Pullin</u> actually supports Cassel. It implies that if the proper amount of fees had been any less than $500 then the attorneys would have to turn over the difference or else be liable for conversion:

> Conceding, as we think must be admitted, that under the facts of the case the defendants had the right to retain possession of the five hundred dollars <u>until</u> it was legally ascertained that a reasonable compensation for their services amounted to a less sum, then it must follow that <u>until</u> such ascertainment was had there would be no ground for the action of conversion.

<u>Pullin</u>, 37 Cal.App. at 220 (emphasis added).

Unlike the law firm in <u>Pullin</u>, the Successor Trustees did not simply retain possession of the Property until it was legally ascertained who was entitled to it. Instead they transferred the Property to Ted's sons. That is conversion.

Defendants argue that the three year statute of limitations for conversion has passed. <u>See</u> Cal. Code Civ. Pro. § 338(c). Defendants claim that Cassel had actual notice of the probate proceedings, should have filed a request for special notice, and had constructive notice of the distributions. <u>See</u> <u>Bono v. Clark</u>, 103 Cal.App.4th 1409, 1433; 128 Cal.Rptr.2d 31, 49 (2002) ("if the possessor acts in a manner inconsistent with the owner's interests, the owner's cause of action for conversion accrues at that time"). Cassel argues that the statute should be tolled because the distributions were concealed and he did not discover

-14-

them until June 23, 2003.

The court is persuaded that the statute should be tolled. The California Supreme Court has stated:

> Ordinarily the statute of limitations applying in conversion actions, Code Civ. Proc., § 388, subd. 3, beings to run from the date of the conversion even though the injured person is ignorant of his rights. This rule, however, is not absolute; for example, where there has been a fraudulent concealment of the facts the statute of limitations does not commence to run until the aggrieved party discovers or ought to have discovered the existence of the cause of action for conversion.
>
> Since a fiduciary has a duty to make a full disclosure of facts which materially affect the rights of the parties, it seems obvious that any act by him amounting to a conversion of trust property is akin to a fraudulent concealment.

Bennett v. Hibernia Bank, 47 Cal.2d 540, 560-61; 305 P.2d 20 (1957) (citations omitted).

In Bennett the directors of Hibernia Bank had changed the by-laws without the consent or ratification of its members. The heir of one member was held not to be bound by the statute of limitations if she had no actual knowledge of the change, notwithstanding the existence of public records disclosing the change. "[W]hile public records [are] constructive notice for certain purposes, [they] are not sufficient to start the running of the statute in favor of the fiduciary as to those of its members who had no knowledge of them." Id., 47 Cal.2d at 562. Under the same reasoning, the statute of limitations did not bar the heir's action against 15 individual defendants who benefitted from the change in the by-laws if they had "notice of any breach of fiduciary duty or trust upon the part of the corporation." Id.

The Successor Trustees had a fiduciary duty to the

-15-

beneficiaries of Leon's trust.  They had a duty to make full disclosure of the facts to Cassel.  As outlined in the Judicial Estoppel Decision they did not make full disclosure but instead they and Ted's sons made misrepresentations to the probate court that all parties were in agreement with the distributions to Ted's sons.  Tolling applies.

Cassel has established his claim for conversion.  Defendants have not established a defense under the statute of limitations. The court will grant Cassel's Partial MSJ on the sixth claim for relief.

F.   <u>Fraudulent transfer (first and seventh claims)</u>

The court rejects these claims for the reasons stated at the hearing on December 14, 2006.

G.   <u>Asserted defense of setoff for taxes</u>

The Partial MSJ asserts that each of Ted's three sons received $224,251.76, for a total distribution of $672,755.28. Defendants do not contest the amounts but argue that the net distributions were only $180,955.30 to each of Ted's sons after payment of $129,889.37 in taxes.  Defendants argue that they are entitled to a setoff for this tax payment, because allegedly if they had not paid these taxes then someone else would have had to -- Leon's trust estate, Ted's bankruptcy estate (or its successor the Liquidating Trust), or Ted's creditors.  According to Defendants, the taxes were passed through to and paid by "the Trust beneficiaries because one beneficiary, not involved in this proceeding [i.e., one of Ted's siblings], could make use of a net loss carry forward."  Opp. to Partial MSJ p. 12:22-24.  This pass-through allegedly saved the probate estate from paying the taxes,

-16-

which ultimately benefits Ted's creditors, according to
Defendants.

Cassel argues that just as one of Ted's siblings had a net
loss carry forward, so too some of Ted's creditors might not have
tax liability, or at least Defendants have not established that by
paying their own taxes they have reduced the taxes that Ted's
creditors would have to pay on a dollar for dollar basis. Cassel
argues that Defendants' remedy is to file amended tax returns and
seek a refund.

The court rejects the setoff defense for a different reason.
Under California law the restitution obligation is without any
right of setoff. See Levy v. Drew, 4 Cal.2d at 461-63. The court
expresses no opinion whether Ted's sons (or whoever paid their tax
obligations) would be entitled to a refund or could establish a
claim against the bankruptcy estate or the Liquidating Trust for
any alleged benefit from paying the taxes on the distributions to
Ted's sons. Levy instructs that such claims must be kept separate
and cannot be used as a setoff. See Levy v. Drew, 4 Cal.2d at
461-63 (after reversal, restitution is a trust obligation and
creditor was obligated to return funds to insolvent debtor without
right of setoff). See also Annotation, Judgment Debtor's Right to
Restitution upon Reversal or Vacation of Judgment as Subject to
Set-off in Favor of Judgment Creditor, 101 A.L.R. 1148 ("Though
the grounds of the decisions have been somewhat variant, the
ultimate question whether the right of a judgment debtor for
restitution upon reversal or vacation of the judgment is subject
to a set-off in favor of the judgment creditor has been uniformly
answered in the negative by all the courts which have had occasion

-17-

1  to pass upon that question.").

2      H.   <u>Asserted defense of litigation privilege</u>

3      Defendants argue that the distributions to Ted's sons are

4  protected by the litigation privilege.  "A privileged publication

5  or broadcast is one made . . . (b) In any . . . (2) judicial

6  proceeding, . . . ."  Cal. Civ. Code § 47(b)(2).

7      Defendants are correct that the litigation privilege has been

8  held to extend beyond the communication itself.  The California

9  Supreme Court has stated:

10          we conclude that if the gravamen of the action is
            communicative, the litigation privilege extends to
11          noncommunicative acts that are necessarily related
            to the communicative conduct, which in this case
12          included acts necessary to enforce the judgment and
            carry out the directive of the writ.
13
   <u>Rusheen v. Cohen</u>, 37 Cal.4th 1048, 1065; 128 P.3d 713, 724; 39
14
   Cal.Rptr.3d 516, 529 (2006) (party's acts to enforce judgment,
15
   which had allegedly been obtained using perjured proof of service,
16
   were protected by litigation privilege).
17
       The court explained:
18
            modern public policy seeks to encourage free access
19          to the courts and finality of judgments by limiting
            derivative tort claims arising out of
20          litigation-related misconduct and by favoring
            sanctions within the original lawsuit.
21
   37 Cal.4th 1048, 1063; 128 P.3d 713, 723; 39 Cal.Rptr.3d 516, 527.
22
       The court assumes for the sake of argument that the gravemen
23
   of Cassel's claims is communicative.  In that event the litigation
24
   privilege might apply both to Defendants' communications (e.g.,
25
   their false and misleading assertions to the probate court that
26
   all beneficiaries agreed to the distributions) and also to the
27
   benefits that they derived from making those assertions -- i.e.,
28

                            -18-

1  the probate court orders approving the distributions and
2  discharging the Successor Trustees.  Cassel's remedy ordinarily
3  would be to return to the probate court and seek sanctions in that
4  case.  This is not an ordinary situation.  In this case there is a
5  separate federal litigation, and there is a separate interest in
6  protecting the integrity of that litigation in federal court.  The
7  Judicial Estoppel Decision bars the Defendants from asserting that
8  their actions are protected by the proceedings state court.  The
9  litigation privilege does not protect Defendants.

10      I.    Pre-judgment interest

11      Both Cassel and the Defendants cite authority that pre-
12  judgment interest is within the court's discretion.  They dispute
13  whether, if any interest is awarded, it should be at the 10% rate
14  applicable to California claims for breach of fiduciary duty, the
15  7% rate applicable to non-fiduciary California claims, or the
16  federal post-judgment interest rate (1.22%) that is often used as
17  a guide to pre-judgment interest.  Defendants argue persuasively
18  that to avoid inconsistency the rate should be uniform as between
19  the Successor Trustees and Ted's sons to avoid inconsistencies
20  between the Defendants' obligations to Cassel and the claims among
21  them for indemnity or contribution.  See Banks v. Gill
22  Distribution Centers, Inc., 263 F.3d 862, 871-72 (9th Cir. 2001).
23  Applying its discretion the court will award interest and will
24  apply the 1.22% federal rate because Cassel's claims have been
25  preserved by federal judicial estoppel and include claims under
26  federal bankruptcy law.

27

28

Case: 99-03144   Doc# 245   Filed: 01/26/07   Entered: 01/26/07 16:13:49   Page 19 of
21

IV.  Conclusion

     Separate orders are being issued reflecting the disposition of Cassel's Partial MSJ and Defendants' MTD as stated in this memorandum decision.  No judgment is being issued at this time. Cassel has not requested a ruling on punitive or consequential damages or attorneys' fees in his Partial MSJ, but neither have Defendants challenged those damages in their MTD so those issues remain to be resolved.

     The court will hold a status conference on February 16, 2007, at 1:30 p.m.

                    ** END OF MEMORANDUM DECISION **

-20-

COURT SERVICE LIST

John Poppin, Esq.                          for Robert M. Cassel
Law Offices of John Poppin
600 California St., 14th Floor
San Francisco, CA  94108

Matthew J. Shier, Esq.                     for Robert M. Cassel
Pinnacle Law Group LLP
425 California St., Suite 1800
San Francisco, CA  94104

Neil R. Bardack, Esq.                      for Theodore M. Kolb,
Naz Roudiani, Esq.                         Ruth Globerson, Felix
McQuaid Bedford & Van Zandt LLP            Kolb, Jonathan Kolb,
221 Main St., 16th Floor                   Richard Kolb, and
San Francisco, CA  94105                   Douglas Kolb

Iain A. Macdonald, Esq.                    bankruptcy counsel to
Law Offices of Iain A. Macdonald          Theodore M. Kolb
Two Embarcadero Center, Suite 1670
San Francisco, CA  94104

Robert A. Franklin, Esq.                   for Uecker and Assoc's,
19330 Stevens Creek Blvd., Suite 100       Inc.
Cupertino, CA  95014

-21-