

**Signed and Filed: May 29, 2007**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 97-32321 |
| | Chapter 11 |
| THEODORE A. KOLB, | |
| Debtor. | |
| | Adv. No. 99-3144 |
| ROBERT M. CASSEL, on behalf of this Chapter 11 Estate, and UECKER & ASSOCIATES, INC., Liquidating Trustee, | |
| Plaintiffs, | |
| v. | |
| RUTH P. GLOBERSON, FELIX O. KOLB, THEODORE A. KOLB, JONATHAN KOLB, RICHARD KOLB, and DOUGLAS KOLB, | |
| Defendants. | |

**AMENDED MEMORANDUM DECISION ON MOTIONS
FOR PARTIAL SUMMARY JUDGMENT AND
TO DISMISS, AND DECISION ON MOTIONS FOR
RECONSIDERATION AND TO AMEND SUPPLEMENTAL COMPLAINT**

-1-

I.    Introduction[1]

On April 26, 2006, the court issued its Memorandum Decision
Regarding Judicial Estoppel that describes the background of this
lengthy dispute in more detail (the "Judicial Estoppel Decision").
Terms not defined herein have the meanings given in that decision.

The rightful ownership of Ted's share of his father's trust
was disputed.  Notwithstanding that dispute, Ted and his siblings,
acting as Successor Trustees of the trust, distributed Ted's share
(the "Property") to his sons and not to Cassel as representative
of Ted's creditors, who turned out to be the rightful owners.

This is an action to recover the Property or its value.  The
Successor Trustees and Ted's sons (collectively, "Defendants")
previously argued that they were protected from liability because
the California probate court approved the distributions and
discharged the Successor Trustees.  The Judicial Estoppel Decision
holds that they are estoped from raising the probate court orders
as a defense in this action.

Defendants now argue that the distributions were properly
made in reliance on this court's earlier judgment that Ted's
disclaimer of any interest in the Property was valid (the
"Disclaimer Judgment") even though the true ownership of the
Property was still disputed and had yet to be finally resolved by

_____

[1]   The following discussion constitutes the court's findings
of fact and conclusions of law.  Fed. R. Bankr. P. 7052
(incorporating by reference Fed. R. Civ. P. 52(a)).  Unless
otherwise indicated, all chapter, section and rule references are
to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal
Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and
promulgated prior to the effective date of The Bankruptcy Abuse
Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119
Stat. 23.

Case: 99-03144    Doc# 279    Filed: 05/29/07    Entered: 05/31/07 08:42:30    Page 2 of
34

the Ninth Circuit.  The court rejects this and other arguments

raised by Defendants and holds that the Successor Trustees are

jointly and severally liable for the amount of all distributions

to Ted's sons, plus interest, and Ted's sons are liable for what

they received individually, plus interest.  The court makes no

determination on Cassel's claim for punitive damages or his

asserted rights to consequential damages and attorneys' fees, and

declines to enter any judgment on fewer than all claims pursuant

to Fed. R. Civ. P. 54(b) (incorporated by Fed. R. Bankr. P.

7054(a)), for the reasons stated on the record at the hearing on

December 14, 2006.

II.  <u>Procedural background</u>

    After the Judicial Estoppel Decision the court issued orders

that among other things permitted Cassel to add the Successor

Trustees as named defendants and to file a supplemental complaint

regarding the distributions made by the Successor Trustees to

Ted's sons.  Cassel's supplemental complaint states (in ¶ 25):

> This Supplemental Complaint concerns facts
> occurring after the [original] Complaint in this
> adversary proceeding was filed on April 19, 1999.
> A copy of the Complaint is attached hereto and
> incorporated herein as if set forth in full.  The
> numbering of paragraphs and the claims for relief
> herein follows sequentially the numbered paragraphs
> and the claims for relief in the Complaint.

    In July of 2006 Defendants filed a motion to dismiss the

Supplemental Complaint (the "MTD").[2]  In October of 2006, Cassel

_____

    [2]  The MTD treats the Supplemental Complaint as subsuming the
original Complaint.  The court will treat the MTD as seeking
dismissal of both the original Complaint and the Supplemental
Complaint.

Case: 99-03144   Doc# 279   Filed: 05/29/07   Entered: 05/31/07 08:42:30   Page 3 of
34

filed his Motion for Summary Judgment on less than All Claims for Relief under Rule 54(b) (the "Partial MSJ"). The parties filed opposition and reply papers and the motions came on for hearing on December 14, 2006.

On January 26, 2007, the court issued a Memorandum Decision on the MTD and the Partial MSJ. The parties filed cross-motions for reconsideration and plaintiffs filed a motion for leave to amend the Supplemental Complaint. Those matters came on for hearing on April 20, 2007. Appearances at the hearings are noted in the record. This Amended Memorandum Decision and orders issued concurrently dispose of those motions.

III. <u>Discussion</u>

    A.   <u>Defendants have not established that the Disclaimer Judgment protects them from liability</u>

Ted's sons cannot use the Disclaimer Judgment as a shield from liability. It is well established that a party who previously obtained funds based on a court order or judgment must make restitution after reversal on appeal, even though the party was entitled to the funds at the time. <u>See generally</u> <u>Arkadelphia Milling Co. v. St. Louis SW Ry. Co.</u>, 249 U.S. 134, 145 (1919); 5 Cal.Jur.3d, App. Review §§ 715, 720; <u>Levy v. Drew</u>, 4 Cal.2d 456, 50 P.2d 435 (1935) (under California law the restitution obligation is in the nature of a trust obligation and is without any right of setoff). Ted's sons have cited no authority to the contrary.

The Successor Trustees also have not established that they can use the Disclaimer Judgment as a shield. They had an

-4-

obligation to determine who should receive the funds that they held. Under the Judicial Estoppel Decision they cannot rely on the state court's orders approving their distributions and discharging them. They must be treated as if they made distributions favoring Ted's sons over Ted's creditors (represented by Cassel) without the protection of those orders.

The Successor Trustees claim that under state law, even without authorization from the probate court, they had no duty to withhold distributions pending determination of Cassel's appeal. They rely principally on Arluk Med. Ctr. Indus. Group, Inc. v. Dobler, 116 Cal.App.4th 1324, 11 Cal.Rptr.3d 194 (2 Dist. 2004).

Arluk is inapposite. It involved a competition between creditors and beneficiaries, not a dispute among alleged beneficiaries. The majority in Arluk held that in proper circumstances a trustee can make a distribution to beneficiaries without incurring personal liability to unpaid creditors, some of whom may be unknown, because under the Probate Code the trustee's sole duty is to beneficiaries. Arluk, 116 Cal.App.4th 1324, 11 Cal.Rptr.3d 194. That holding has nothing to do with a trustee's personal liability for making distributions to persons who turned out not to be beneficiaries at all (Ted's sons), leaving the true beneficiaries (Ted's creditors through Cassel) with nothing.

The Successor Trustees claim that if Ted's sons had demanded distributions on the strength of the Disclaimer Judgment then they would have had to comply with such demands, but that is not what happened and they have not established that this is the law. The Disclaimer Judgment might have been strong evidence that Ted's sons were the proper parties to receive distributions, but that

-5-

judgment was subject to reversal on appeal as the Successor
Trustees knew. This court had no jurisdiction to authorize the
Successor Trustees to make distributions out of Leon's trust
estate, and was never asked to do so. The probate court was never
told that there was still a live controversy let alone asked to
rule on it when the distributions were made. Instead it was told
unequivocally that Ted's sons were entitled to the distributions.
The Judicial Estoppel Decision prevents the Successor Trustees
from using as a shield the state court orders authorizing
distributions and discharging them. Cassel has established
various theories under which a person who distributes contested
funds to the wrong party is liable, as discussed below.

The Successor Trustees claim, relying on Glass v. Najafi, 78
Cal.App.4th 45, 92 Cal.Rptr.2d 606 (2000), that they are protected
because they acted consistent with the Disclaimer Judgment before
it was reversed. That reliance is misplaced. Glass held that a
landlord was entitled to act upon a writ of possession and to use
self-help to evict a tenant before the writ was quashed. Id., 78
Cal.App.4th at 50-51. It says nothing about whether the landlord
had to return possession after the writ was quashed. See id. at
48 (issue of possession bifurcated from other issues). Cf.
Schubert v. Bates, 30 Cal.2d 785, 185 P.2d 793 (1947) (tenant
dispossessed in unlawful detainer action was entitled to be
restored to possession after judgment was reversed). Glass has no
bearing on whether the Successor Trustees have to return the
distributions, or the value of the distributions, that they made
to the wrong parties. The Successor Trustees have not met their
burden to establish a defense to Cassel's claims based on the

-6-

Disclaimer Judgment.

B. **Defendants' liability under Section 542(a) (second and third claims)**

Defendants argue that any claim under Section 542(a) is barred because it was not expressly reserved in Ted's confirmed Plan. The court disagrees.

The principal economic aspect of the Plan is continuing Cassel's pre-confirmation action, and that action is based in large part on Section 542. The original Complaint, filed before confirmation, is entitled "Creditor's Complaint to Avoid Fraudulent Transfer, <u>To Recover Property of the Estate</u> and For Other Related Relief." (Emphasis added.) It cites Section 542 at the top of the second page and it argues (second claim for relief) that Ted's disclaimer was invalid. The claim under Section 542(a) survived confirmation and Cassel has standing to assert it.[3]

Section 542(a) provides:

> 542. <u>Turnover of property to the estate</u>
>
> (a) Except as provided in subsection (c) or (d) of this section [regarding entities without notice or knowledge of the bankruptcy case, or insurance companies], an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such

---

[3] Defendants also argue (in their opposition to the Partial MSJ, p. 4:25-26) that by implication Section 542 cannot be used "when property has been transferred in derogation of one of the avoiding powers" and that the Plan did not preserve any avoiding powers (e.g., a claim under Section 549). The court disagrees with the premise that the Plan needed to preserve any power to avoid the distributions to Ted's sons, which had not yet occurred when the Plan was confirmed. In any event, Section 542(a) provides an independent basis for recovery of the Property, wholly apart from any avoiding powers.

-7-

> property or the value of such property, unless such
> property is of inconsequential value or benefit to
> the estate.

11 U.S.C. § 542(a).

Defendants had "possession, custody, or control, during the case," of the Property. They knew that according to Cassel this was property of the estate (or, in the language of the statute, that Ted's beneficial interest in assets in his father's trust was "property that the trustee may use, sell, or lease under section 363"). They knew that the rightful owner of the Property had yet to be finally determined on appeal. Yet they ignored Cassel's claims. The Successor Trustees distributed the Property and Ted's sons received it. Defendants must deliver and account for "the value of such property."

Under Section 542(a) it does not matter if Defendants genuinely believed that Ted's sons were entitled to the Property. The statute does not require "actual knowledge" of the true ownership of property but only "notice of circumstances that would cause a reasonable person to inquire further" as to the true ownership of the property at issue. Matter of USA Diversified Prod's, Inc., 100 F.3d 53, 57 (7th Cir. 1996). Defendants had notice of such circumstances: Cassel's adversary proceeding and his appeal from the Disclaimer Judgment. As the bankruptcy court in Diversified observed, any distribution notwithstanding such notice is at the distributor's "own peril." In re USA Diversified Prod's, Inc., 193 B.R. 868, 879 (Bankr. N.D. Ind. 1995) (citation omitted).

Nor does it matter that the Successor Trustees, and perhaps Ted's sons as well, no longer have possession, custody, or control

-8-

of the Property.  Section 542(a) speaks of delivering "the value of such property" so it applies "not just to property <u>presently</u> in someone's possession, custody or control but to property in its 'possession, custody or control <u>during the case.</u>'"  <u>Diversified</u>, 193 B.R. at 875 (emphasis in original).  Defendants may have divested themselves of the Property but they certainly had possession, custody, or control during the case.  They must now return the value of such Property.[4]

The Successor Trustees are jointly and severally liable for the entire amount of what they distributed to Ted's sons, even if they did not receive or benefit from such distributions themselves.  In <u>Diversified</u> a law firm received $125,000 from a Mr. Davis to fund a possible settlement involving him and the company he owned, and after the company filed a Chapter 11 petition the law firm retained $14,000 for its services and returned the balance to Mr. Davis, who claimed that the $125,000

---

[4]  Defendants argue that Section 542(a) is inapplicable because (a) the statute allegedly only applies "during the case" and (b) the case allegedly ends upon the effective date of the plan of reorganization, citing <u>In re Greater Jacksonville Transp. Co.</u>, 169 B.R. 221 (Bankr. M.D. Fla. 1994).  Defendants are wrong on both counts.

What must occur "during the case" is the possession, custody, or control of property (<u>Diversified</u>, 193 B.R. at 875) not the resolution of the Section 542(a) claim.  Nor does the case end upon confirmation.  Ted's Chapter 11 case was open when the distributions to Ted's sons were made and it is still open today.  <u>Greater Jacksonville</u> held that the period for filing a UCC continuation statement was extended until 60 days after the effective date of the plan of reorganization, which was the "termination" of insolvency proceedings for purposes of former UCC § 9-403(2) as enacted in Florida.  <u>Id.</u> at 223.  That decision has nothing to do with whether a person must return property, or its value, that was in the person's possession, custody, or control "during a case" under Section 542(a).  <u>Greater Jacksonville</u> specifically distinguishes "termination" of insolvency proceedings under UCC § 9-403(2) from closing a case under Fed. R. Bankr. P. 3022.  <u>Id.</u> at 224.

-9-

had come from his personal funds.  That turned out to be wrong and the law firm was held liable for the entire $125,000, not just the $14,000 it had retained.  <u>Diversified</u>, 100 F.3d at 56.

Ted's sons are liable for what they received.  They had possession, custody, or control, during the case, of a portion of the Property and they must return what they received or its value.

The court will grant Cassel's Partial MSJ on his second claim for relief (in the original Complaint) as against the Successor Trustees as successors to named defendant Hilde and as against Ted's sons as named defendants.  The court will also grant Cassel's Partial MSJ on the third claim for relief (in the Supplemental Complaint) as against the Successor Trustees and Ted's sons.

C.  <u>Sections 549 and 550 (fourth claim)</u>

Cassel argues that the Successor Trustees became transferees of an avoidable postpetition transfer under Section 549 when they "assumed Hilde's role and took possession of property of the probate estate, including the portion which should have been paid to Ted's bankruptcy estate, and transferred it to Ted's sons." Opp. to MTD at 5:14-16.  Cassel asserts that Ted's sons are immediate or mediate transferees from the Successor Trustees within the meaning of Section 550(a)(2).  The court does not decide who is a transferee and whether Sections 549 and 550 are applicable.  Assuming without deciding that Cassel states a claim under those sections, his fourth claim for relief is barred by the two year statute of limitations in Section 549(d).  <u>See</u> 11 U.S.C. § 549(d) ("An action or proceeding under this section may not be commenced after the earlier of -- (1) two years after the date of

-10-

1  the transfer sought to be avoided; or (2) the time the case is
2  closed or dismissed.").

3      The Defendants did not raise the statute of limitations until
4  oral argument.  The court's initial view at the hearing on
5  December 14, 2006, was that Defendants had waived this defense by
6  not raising in it their opposition to Cassel's MSJ as required by
7  Fed. R. Civ. P. 56(c) and (e) (incorporated by Fed. R. Bankr. P.
8  7056).  See In re Pugh, 158 F.3d 530, 532-38 (11th Cir. 1998)
9  (Section 549(d) is a true statute of limitation that can be
10  waived).  On further consideration the court is persuaded that the
11  defense of a time bar has not been waived.

12      Courts are not inclined to find a technical failure to raise
13  an affirmative defense when the plaintiff had adequate notice of
14  the defense and was not deprived of the opportunity to respond.
15  See, e.g., Camarillo v. McCarthy, 998 F.2d 638, 639 (9th Cir.
16  1993).  After the hearing Defendants filed and served a letter
17  brief (docket no. 239) arguing the limitations issues and inviting
18  Cassel to respond should he wish to do so.  Cassel has filed no
19  response and has not established any prejudice from Defendants'
20  lateness in raising their defense under Section 549(d).  Cassel
21  concedes in his opposition to the MTD (pp. 7:25-8:2) that the
22  Defendants' conduct was revealed on June 23, 2003, and that the
23  first supplemental complaint was not filed until almost three
24  years later, on June 19, 2006.  Therefore Cassel's fourth claim
25  for relief is barred by the two year statute of limitations in
26  Section 549(d).

27
28

-11-

1    D.    <u>Successor Trustees' liability for breach of trust (fifth</u>
2          <u>claim)</u>

3    Defendants argue that between the time of the Disclaimer
4    Judgment and the Ninth Circuit's reversal the estate was not a
5    beneficiary so they had no fiduciary duty to the estate.  That is
6    incorrect.  The estate was <u>always</u> a beneficiary (according to the
7    Ninth Circuit's binding determination).  There were intermediate
8    rulings saying otherwise, but they were reversed.  Defendants may
9    have tried to moot the Ninth Circuit decision by obtaining the
10   state court orders, but they are judicially estopped from using
11   those orders as a shield.  As Cassel argues, there is no issue of
12   mootness both for this reason and because this court can fashion
13   effective relief in the form of restitution or damages.

14   Cassel has established a prima facie claim against the
15   Successor Trustees for breach of trust and the Successor Trustees
16   have not established any defense.  The court will grant the Cassel
17   Partial MSJ against the Successor Trustees as to the fifth claim
18   for relief.[5]

19   E.    <u>Defendants' liability for conversion (sixth claim)</u>
20   "Conversion is any act of dominion wrongfully exerted over
21   another's personal property in denial of or inconsistent with his
22   rights therein."  <u>Susumu Igauye v. Howard</u>, 114 Cal.App.2d 122,
23   126; 249 P.2d 558, 561 (1952).  <u>See also</u> Cal. Civil Code §§ 1712,
24   1713.  Defendants argue that a plaintiff must establish an
25   <u>immediate</u> right to possession as an element of conversion, citing

26
27        [5]  The court previously issued orders that erroneously denied
     the MTD and granted the Partial MSJ as to Ted's sons on the fifth
     claim for relief.  All parties agree that Ted's sons were not
28   named in that claim, and the amended orders correct this error.

-12-

1  <u>Greka Integrated, Inc. v. Lowrey</u>, 133 Cal.App.4th 1572, 1581; 35
2  Cal.Rptr.3d 684, 691 (2005).  Defendants read too much into <u>Greka</u>.

3      <u>Greka</u> states that the elements of conversion include "the
4  plaintiff's ownership or right to possession of the property <u>at</u>
5  <u>the time of the conversion</u>."  <u>Greka</u>, 133 Cal.App.4th at 1581
6  (citation omitted, emphasis added).  <u>See also</u>, <u>Aero Prop's, Inc.</u>
7  <u>v. Gottlieb</u>, 206 Cal.App.2d 711, 716; 24 Cal.Rptr. 277, 280 (1962)
8  (it was not conversion to hold collateral until debt was repaid).
9  As Cassel argues, the bankruptcy estate <u>did</u> have rights in the
10 Property "at the time of conversion" when the distributions were
11 made.  The bankruptcy court and District Court did not think so,
12 but the Ninth Circuit reversed and held that Ted's disclaimer was
13 never effective so the Property had <u>always</u> been property of the
14 estate.

15     Nothing in <u>Greka</u> suggests the opposite.  An employee was
16 accused of converting Greka's corporate documents but he stated in
17 his declaration that "he took the documents home at the direction
18 of Greka's chief executive officer" and Greka "presented no
19 evidence to the contrary" so it failed to make "a prima facie
20 showing that [the employee's] possession of the documents is
21 'wrongful.'"  <u>Greka</u>, 133 Cal.App.4th 1572, 1581 (citation
22 omitted).  There is no similarity between <u>Greka</u> and this case.
23 Cassel never consented to the Successor Trustees' transfer of the
24 Property to Ted's sons.

25     Defendants argue that dominion over the Property was lawful
26 at the time so no conversion was committed, citing <u>Kertz v. Paris</u>,
27 168 Cal.App.2d 67, 335 P.2d 154 (1959).  That case involved some
28 laundry equipment that had been left on the premises by evicted

-13-

lessees and that was used by subsequent lessees and eventually sold by them. The evicted lessees sued the landlord, who was held not liable for conversion. The court stated:

> In a very similar case, it has been held that a lessor who secures possession of the leased premises upon default by the lessee in payment of rent, and transfers possession of the premises to one who takes and holds with notice and knowledge of lessee's rights in the furnishings, is not liable to the lessee for a tortious conversion of the furnishings by the lessee, <u>in the absence of a showing that the lessor participated in the conversion</u>.

<u>Kertz</u>, 168 Cal.App.2d at 70 (citation omitted, emphasis added).

In this case the Successor Trustees did participate with Ted's sons in the conversion. They exercised dominion over the Property that was inconsistent with the rights asserted by Cassel.

Defendants also cite <u>Pullin v. Allen</u>, 37 Cal.App. 218, 173 P. 772 (1918). That case involved a fee dispute in which the attorneys withheld $500 to which they claimed they were entitled. <u>Pullin</u> actually supports Cassel. It implies that if the proper amount of fees had been any less than $500 then the attorneys would have to turn over the difference or else be liable for conversion:

> Conceding, as we think must be admitted, that under the facts of the case the defendants had the right to retain possession of the five hundred dollars <u>until</u> it was legally ascertained that a reasonable compensation for their services amounted to a less sum, then it must follow that <u>until</u> such ascertainment was had there would be no ground for the action of conversion.

<u>Pullin</u>, 37 Cal.App. at 220 (emphasis added).

Unlike the law firm in <u>Pullin</u>, the Successor Trustees did not simply retain possession of the Property until it was legally ascertained who was entitled to it. Instead they transferred the

-14-

Property to Ted's sons.  That is conversion.

Defendants argue that the three year statute of limitations for conversion has passed.  See Cal. Code Civ. Pro. § 338(c). Defendants claim that Cassel had actual notice of the probate proceedings, should have filed a request for special notice, and had constructive notice of the distributions.  See Bono v. Clark, 103 Cal.App.4th 1409, 1433; 128 Cal.Rptr.2d 31, 49 (2002) ("if the possessor acts in a manner inconsistent with the owner's interests, the owner's cause of action for conversion accrues at that time").  Cassel argues that the statute should be tolled because the distributions were concealed and he did not discover them until June 23, 2003.

The court is persuaded that the statute should be tolled. In Bennett v. Hibernia Bank, 47 Cal.2d 540, 549; 305 P.2d 20, 26 (1957), the Hibernia Bank was reorganized from a "membership corporation" to a "stock corporation . . . with stock in the amount of $7,000,000 divided among" 15 members.  The complaint alleged that this was done without the consent or ratification of a 16th member, whose heirs received only $363.54.  On a general demurrer the California Supreme Court rejected the statute of limitations defense.  The bank owed a fiduciary duty to make full disclosure to the 16th member and not doing so was "akin to a fraudulent concealment" that tolled the running of the statute:

> Ordinarily the statute of limitations applying in conversion actions, Code Civ. Proc., § 388, subd. 3, [begins] to run from the date of the conversion even though the injured person is ignorant of his rights.  This rule, however, is not absolute;  for example, where there has been a fraudulent concealment of the facts the statute of limitations does not commence to run until the aggrieved party discovers or ought to have discovered the existence

-15-

of the cause of action for conversion.

> Since a fiduciary has a duty to make a full disclosure of facts which materially affect the rights of the parties, it seems obvious that any act by him amounting to a conversion of trust property is akin to a fraudulent concealment.

Bennett v. Hibernia Bank, 47 Cal.2d 540, 560-61; 305 P.2d 20 (1957) (citations omitted).

The Successor Trustees had a fiduciary duty to make full disclosure to Cassel, who stood in Ted's shoes as a beneficiary of his father's trust.  Cassel did not need to file any request for special notice because he was entitled to rely on the Successor Trustees' duty to make full disclosure.  The absence of that disclosure is "akin to a fraudulent concealment" and it tolled the running of the statute of limitations from the time of conversion until the conversion was discovered on June 23, 2003.  Id.  The Supplemental Complaint was filed less than three years later, on June 19, 2006, and is therefore timely.

The fact that the probate proceedings were of public record did not give Cassel constructive notice.  Bennett held that "while public records [are] constructive notice for certain purposes, [they] are not sufficient to start the running of the statute in favor of the fiduciary as to those of its members who had no knowledge of them."  Id., 47 Cal.2d at 562.

Therefore the statute of limitations does not bar Cassel's conversion claim against the Successor Trustees.  The next question is whether it bars his conversion claim against Ted's sons.

Ted's sons argue that the court should reconsider its holding that Bennett is applicable to them because they are not

-16-

fiduciaries.  That misses the point.  The court's reasoning does
not depend on whether they are fiduciaries.[6]

    In Bennett the defendants included the 15 individuals who
received the stock from Hibernia.  The California Supreme Court
rejected their statute of limitations defense even though they may
not have been fiduciaries:

                It does not follow from the fact that there

_____

    [6]  Cassel argues that Ted's sons are in fact fiduciaries.
Cassel's theory is apparently that after the Ninth Circuit's
decision became final (a) Ted's sons had not just a restitutionary
obligation to return the distributions but a fiduciary duty to do
so, and (b) their failure to do so, or to reveal their conduct to
Cassel, tolled the running of the three year statute of
limitations for conversion.
    Ted's sons argue that any restitutionary obligation is
analogous to a constructive trust and therefore creates no
fiduciary relationship.  See PCO, Inc. v. Christensen et al., LLP,
07 C.D.O.S. 4776, 4780 (2007); Haskel Engineering & Supply Co. v.
Hartford Acc. & Indem. Co., 78 Cal.App.3d 371, 144 Cal.Rptr. 189
(1978).  Cassel cites cases that describe the restitutionary
obligation using language reminiscent of express or resulting
trusts, or that impose trust duties even on constructive trustees.
See Levy, 4 Cal.2d at 462, 50 P.2d at 437; Ward v. Sherman, 155
Cal. 287, 291; 100 P. 864, 865-66 (1909); Redke v. Silvertrust, 6
Cal.3d 94, 106-07; 98 Cal.Rptr. 293, 300-01 (1940).
    The court need not decide these issues.  Assuming for the
sake of argument that Cassel's fiduciary theory is correct, any
tolling based on that theory (as opposed to Bennett, discussed in
the text) is too little too late.
    Cassel did not file his Supplemental Complaint until June 19,
2006, which is more than four years after Ted's sons received the
distributions.  See Supplemental Complaint (docket no. 166, ¶ 33)
(alleging distributions as late as February 15, 2002).  Under
Cassel's fiduciary theory tolling does not begin until there was a
restitutionary obligation, which was approximately late April of
2003 when the Ninth Circuit's decision became final.  See Fed. R.
Bankr. P. 8002.  Any tolling would end when Cassel discovered the
conversion on June 23, 2003.  This is only a couple of months out
of a period of more than four years, which is inadequate to stop
the three year limitations period from expiring.
    Cassel argues in the alternative that Ted's sons should be
estopped to plead the statute of limitations.  See Pashley v.
Pacific Elec. Co., 25 Cal.2d 226, 231-36; 153 P.2d 325, 328-30
(1944).  The court is not persuaded.  Among other things Cassel
could have been more diligent in monitoring the probate
proceedings and filing the Supplemental Complaint after the
conversion was discovered.

-17-

> may have been <u>no fiduciary relationship</u> between [the heirs of the 16th member of the bank] and the 15 individual defendants that the statute has run in their favor.  The complaint alleges that the individual defendants received their shares of stock in 1947 with full knowledge of, and subject to, the rights of [the 16th member] and his successors as members.  Accordingly, we must assume that these defendants had <u>notice of any breach of fiduciary duty or trust</u> upon the part of the corporation.  In analogous situations it has been held that, if a trustee of an express trust improperly transfers trust property to a third person who has knowledge that the transfer is in breach of trust, the statute of limitations does not run on the beneficiary's action against the third person until such time as the beneficiary learns of the breach of trust or of facts sufficient to arouse his suspicion.

<u>Bennett</u>, 47 Cal.2d at 34, 305 P.2d at 34 (emphasis added, citations omitted).

Ted's sons had notice that the Successor Trustees were distributing property to them that, according to Cassel, belonged to Ted's creditors.  As stated in the Judicial Estoppel Decision (p. 4:8-11), Cassel had served a notice of this claim on the state court attorneys for Ted's sons and those attorneys knew of Cassel's claims anyway because they "had been arguing for years in federal court over whether Ted's disclaimer was effective . . . ."  Ted's sons nevertheless participated with the Successor Trustees in misrepresenting to the state court that there was no dispute that they were entitled to the Property.  Therefore under <u>Bennett</u> tolling applies to Ted's sons despite the fact that there may have been no fiduciary relationship between them and Ted's creditors.

For all of these reasons Cassel has established his claim for conversion and Defendants have not established that the claim is time barred.  The court will grant Cassel's Partial MSJ on the

-18-

1 sixth claim for relief.[7]

2     F.   <u>Fraudulent transfer (first and seventh claims)</u>

3     The court rejects these claims for the reasons stated at the
4 hearing on December 14, 2006.

5     G.   <u>Asserted defense of setoff for taxes</u>

6     The Partial MSJ asserts that each of Ted's three sons
7 received $224,251.76, for a total distribution of $672,755.28.
8 Defendants do not contest the amounts but argue that the net
9 distributions were only $180,955.30 to each of Ted's sons after
10 payment of $129,889.37 in taxes. Defendants argue that they are
11 entitled to a setoff for this tax payment, because allegedly if
12 they had not paid these taxes then someone else would have had to
13 -- Leon's trust estate, Ted's bankruptcy estate (or its successor
14 the Liquidating Trust), or Ted's creditors. According to
15 Defendants, the taxes were passed through to and paid by "the
16 Trust beneficiaries because one beneficiary, not involved in this
17 proceeding [i.e., one of Ted's siblings], could make use of a net
18 loss carry forward." Opp. to Partial MSJ p. 12:22-24. This pass-
19 through allegedly saved the probate estate from paying the taxes,
20 which ultimately benefits Ted's creditors, according to
21 Defendants.

22     Cassel argues that just as one of Ted's siblings had a net

23 _____

24     [7] Ted's sons argue in their motion for reconsideration that
as a matter of law there could be no punitive damages assessed
25 against them because, if Cassel's sixth claim is time barred,
there is no surviving tort claim to support punitive damages.
26 That argument now falls because the court has rejected their time
bar argument. Cassel may also be able to establish a tort of
27 aiding and abetting a breach of fiduciary duty by the Successor
Trustees as discussed below. That said, the burden is still on
28 Cassel to establish how punitive damages would be warranted.

-19-

loss carry forward, so too some of Ted's creditors might not have
tax liability, or at least Defendants have not established that by
paying their own taxes they have reduced the taxes that Ted's
creditors would have to pay on a dollar for dollar basis.  Cassel
argues that Defendants' remedy is to file amended tax returns and
seek a refund.

The court rejects the setoff defense for a different reason.
Under California law the restitution obligation is without any
right of setoff.  See Levy v. Drew, 4 Cal.2d at 461-63.  The court
expresses no opinion whether Ted's sons (or whoever paid their tax
obligations) would be entitled to a refund or could establish a
claim against the bankruptcy estate or the Liquidating Trust for
any alleged benefit from paying the taxes on the distributions to
Ted's sons.  Levy instructs that such claims must be kept separate
and cannot be used as a setoff.  See Levy v. Drew, 4 Cal.2d at
461-63 (after reversal, restitution is a trust obligation and
creditor was obligated to return funds to insolvent debtor without
right of setoff).  See also Annotation, Judgment Debtor's Right to
Restitution upon Reversal or Vacation of Judgment as Subject to
Set-off in Favor of Judgment Creditor, 101 A.L.R. 1148 ("Though
the grounds of the decisions have been somewhat variant, the
ultimate question whether the right of a judgment debtor for
restitution upon reversal or vacation of the judgment is subject
to a set-off in favor of the judgment creditor has been uniformly
answered in the negative by all the courts which have had occasion
to pass upon that question.").

-20-

H.    Asserted defense of litigation privilege

Defendants argue that the distributions to Ted's sons are protected by the litigation privilege. "A privileged publication or broadcast is one made . . . (b) In any . . . (2) judicial proceeding, . . . ."  Cal. Civ. Code § 47(b)(2).

Defendants are correct that the litigation privilege has been held to extend beyond the communication itself.  The California Supreme Court has stated:

> we conclude that if the gravamen of the action is communicative, the litigation privilege extends to noncommunicative acts that are necessarily related to the communicative conduct, which in this case included acts necessary to enforce the judgment and carry out the directive of the writ.

Rusheen v. Cohen, 37 Cal.4th 1048, 1065; 128 P.3d 713, 724; 39 Cal.Rptr.3d 516, 529 (2006) (party's acts to enforce judgment, which had allegedly been obtained using perjured proof of service, were protected by litigation privilege).

The court explained:

> modern public policy seeks to encourage free access to the courts and finality of judgments by limiting derivative tort claims arising out of litigation-related misconduct and by favoring sanctions within the original lawsuit.

37 Cal.4th 1048, 1063; 128 P.3d 713, 723; 39 Cal.Rptr.3d 516, 527.

The court assumes for the sake of argument that the gravemen of any relevant claim is communicative.  In that event the litigation privilege might apply both to Defendants' communications (e.g., their false and misleading assertions to the probate court that all beneficiaries agreed to the distributions) and also to the benefits that they derived from making those assertions -- i.e., the probate court orders approving the

-21-

distributions and discharging the Successor Trustees. Cassel's
remedy ordinarily would be to return to the probate court and seek
sanctions or other relief in that case. This is not an ordinary
situation. In this case there is a separate federal litigation,
and there is a separate interest in protecting the integrity of
that litigation in federal court. The Judicial Estoppel Decision
bars the Defendants from asserting that their actions are
protected by the proceedings state court. The litigation
privilege does not protect Defendants.

I.    Pre-judgment interest

Both Cassel and the Defendants have cited authority that pre-
judgment interest is within the court's discretion, although in
his motion for reconsideration Cassel argues that in reality his
claims are based on state law and the court has no discretion.
The parties also dispute whether, if any interest is awarded, it
should be at the 10% rate applicable to California claims for
breach of fiduciary duty, the 7% rate applicable to non-fiduciary
California claims, or the federal post-judgment interest rate that
is often used as a guide to pre-judgment interest. In his motion
for reconsideration Cassel also argues that if the federal rate of
interest rate applies then it should be compounded, citing 28
U.S.C. § 1961(b), and multiple rates should apply based on when
each distribution was made to Ted's sons, rather than the 1.22%
rate applicable when the Ninth Circuit rendered its opinion.

The court is persuaded that it has discretion whether to
award pre-judgment interest, and at what rate, because Cassel's
claims have been preserved by federal judicial estoppel and
include claims under federal bankruptcy law. Defendants argue

-22-

persuasively that any interest rate should be uniform as between
the Successor Trustees and Ted's sons to avoid inconsistencies
between the Defendants' obligations to Cassel and the claims among
them for indemnity or contribution.  See Banks v. Gill
Distribution Centers, Inc., 263 F.3d 862, 871-72 (9th Cir. 2001).
Applying its discretion the court will award interest and will
apply a rate of 1.22% per annum without any compounding.

     J.   Amendment to the Supplemental Complaint

    Plaintiffs seek leave to add what they call a "Fifth Claim 2d
for Relief (Aiding and Abetting Breach of Trust)."  The entire
proposed claim, apart from allegations incorporated by reference,
consists of the following:

> Ted's children, for their own financial
> advantage, actively participated with the Successor
> Trustees in the breaches of trust alleged above, by
> inducing, aiding and/or abetting one or more [of]
> the breaches by receiving trust property from the
> Successor Trustees in knowing breach of the trust.
> [Emphasis added.]

    Defendants argue that the court should not grant leave to
make this amendment because there has been substantial delay.  The
court is not persuaded.  Much of that delay is of their own doing.
They have also shown no prejudice.  See generally Foman v. Davis,
371 U.S. 178 (1962); Fed. R. Bankr. P. 7015 (incorporating Fed. R.
Civ. P. 15).

    Defendants argue in the alternative that it would be futile
to allow the amendment because "[a] non-fiduciary cannot conspire
to breach a duty owed only by a fiduciary."  Kidron v. Movie
Acquisition Corp., 40 Cal.App.4th 1571, 1597; 47 Cal.Rptr.2d 752,
768 (2d Dist. 1995, reh. den. 1996) (citing Applied Equipment
Corp. v. Litton Saudi Arabia Ltd., 7 Cal.4th 503, 510-11; 28

-23-

Cal.Rptr.2d 475, 478 (1994)). Cassel argues that there is an exception to this rule and that a non-fiduciary can be liable for inducing, aiding, or abetting a breach of fiduciary duty if the non-fiduciary actively participates in furtherance of his or her own financial gain.

The court believes that both parties are confusing <u>conspiracy</u> theories with <u>aiding and abetting</u> theories. Defendants are correct that a non-fiduciary cannot conspire to breach a fiduciary duty, but a non-fiduciary can aid and abet a breach of fiduciary duty.[8] The parties' disagreement concerns what is, in the court's view, a largely irrelevant split among the California Courts of Appeal that is properly limited to claims based on conspiracy.

It is well established that at common law a beneficiary may recover from a transferee who receives trust property with notice or knowledge of the trustee's breach of fiduciary duty. <u>See</u> <u>City of Atascadero v. Merrill Lynch et al., Inc.</u>, 68 Cal.App.4th 445, 461; 80 Cal.Rptr.2d 340 (1st Dist. 1998) ("under long-established trust law, trust beneficiaries retain the right to bring claims directly against third parties who have induced the trustee to commit a breach of trust, aided or abetted such a breach by the trustee, or received and retained trust property from the trustee

---

[8]  The parties have not briefed whether California recognizes a tort for "inducing" a breach of fiduciary duty, nor whether "aiding" a breach is different from "abetting" a breach. The court expresses no opinion on these issues, but assumes for the sake of discussion Cassel's proposed amendment comprises a single tort known as aiding and abetting a breach of fiduciary duty. <u>But cf.</u> <u>1-800 Contacts, Inc. v. Steinberg</u>, 107 Cal.App.4th 568, 581 & n.10, 588 & n.15; 132 Cal.Rptr.2d 789, 799-800 & n.10, 805 & n.15 (2d Dist. 2003) (on plaintiff's concession, treating claim for inducing breach of fiduciary duty as equivalent to claim for conspiracy to breach fiduciary duty).

-24-

in breach of trust") (citations omitted); <u>Restatement (Second) of</u>
<u>Trusts</u> § 291 (1959) (transferee with notice or knowledge of breach
of trust can be compelled to restore property or pay its value as
of various times, depending on when notice or knowledge occurred);
A.W. Scott & W.F. Fratcher, 4 <u>The Law of Trusts</u> § 291 (4th Ed.
1989 & 2006 Supp.) ("<u>Scott on Trusts</u>") ("If a trustee in breach of
trust transfers trust property to a person who takes with notice
of the breach of trust, the transferee can be compelled to restore
the property to the trust, or to pay its value or its proceeds if
he has disposed of it."); 13 Witkin, <u>Summary of Cal. Law</u> § 149(3)
("The beneficiary may sue persons (other than bona fide
purchasers) to whom the trustee has wrongfully transferred trust
property, to recover the property or its product.") (citations
omitted) <u>and</u> <u>id.</u> § 150 (same, specifically where third person
participates in breach of trust).

Recovery of wrongfully transferred property may be
appropriate even when the transferee acted in good faith.  <u>See</u>
<u>Restatement (Second) of Trusts</u> § 291, Illustration 2 (transferee
who has not disposed of property can be compelled to restore it,
even though he thought trustee was empowered to sell "owing to a
misinterpretation of the terms of the trust") and Comment g
(transferee with notice of breach of trust who has disposed of
property is liable for its value, "even though he did not have
knowledge of the breach of trust or act in bad faith"); <u>Scott on</u>
<u>Trusts</u> § 291.2 (transferee who did not receive property with
actual knowledge of breach of trust should have no liability
beyond returning property, and any income received from it).  <u>See</u>
<u>also</u> 76 Am. Jur.2d Trusts § 532 ("Where a trustee wrongfully sells

-25-

and transfers trust property, . . . the beneficiary may follow the property or its proceeds, so far as it can be traced, into the hands of the purchaser, assuming, of course, that the purchaser does not have the status of a bona fide purchaser for value.").

The above authorities generally do not distinguish between conspiracy and other possible grounds for recovery of trust property from a transferee. See Neilson v. Union Bank of Cal., N.A., 290 F.Supp.2d 1101, 1126 n.74 (C.D. Cal. 2003) ("The Restatement speaks of 'participation' in a breach of trust, rather than 'conspiracy' or 'aiding and abetting.'"). Defendants treat Cassel's claim as one based on conspiracy. The court will address conspiracy first and then turn to aiding and abetting.

Conspiracy-based claims have some advantages to a plaintiff.[9] A conspiracy imposes vicarious liability and need not be limited to transferees. Berg & Berg Enters., LLC v. Sherwood Partners, Inc., 131 Cal.App.4th 802, 823 & n.10; 32 Cal.Rptr.3d 325, 339-40 & n.10 (6th Dist. 2005). Conspiracy-based claims also have some disadvantages from a plaintiff's point of view. One disadvantage is that if the alleged conspirator is an attorney, agent, or employee of the fiduciary then he or she is generally protected by the "'agent's immunity rule,' which establishes that 'an agent is not liable for conspiring with the principal when the agent is acting in an official capacity on behalf of the principal.'" Berg, 131 Cal.App.4th at 817; 32 Cal.Rptr.3d at 335 (following

---

[9] As stated in Applied Equipment, 7 Cal.4th at 510-11, 869 P.2d at 478, "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." (Citation omitted.)

-26-

<u>Doctors' Co. v. Superior Court</u>, 49 Cal.3d 39, 260 Cal.Rptr. 183 (1989)) (other citations omitted); Cal. Civ. Code § 1714.10 (codifying rule of <u>Doctors' Co.</u> as to attorneys).  An exception to the agent's immunity is when the agent actively participated in the breach of the trustee's fiduciary duty in furtherance of his or her own financial gain.  <u>Berg</u>, 131 Cal.App.4th at 818 and 834, 32 Cal.Rptr.3d at 335 and 348.  This exception, and the agent's immunity rule as a whole, are irrelevant in the court's view because Ted's sons are not alleged to be the Successor Trustees' attorneys, agents, or employees.  Nevertheless both the parties and some reported decisions conflate the exception to the agent's immunity rule with a second limitation on conspiracy-based claims.

The second limitation is that conspiracy is not an independent tort.  It "allows tort recovery only against a party who <u>already</u> owes [a] duty and is not immune from liability based on applicable substantive tort law principles."  <u>Applied Equipment</u>, 7 Cal.4th at 514, 28 Cal.Rptr.2d at 480 (emphasis added).  Some duties are nearly universal:  "The law imposes the obligation that every person is bound without contract to abstain from injuring the person or property of another, or infringing upon any of his rights."  <u>Younan v. Equifax Inc.</u>, 111 Cal.App.3d 498, 511; 169 Cal.Rptr. 478, 486 (2d Dist. 1980).  Other duties apply only to certain classes of persons, or are inapplicable to certain classes of persons.  In <u>Applied Equipment</u> the California Supreme Court held that a contracting party could not conspire to interfere with its own contract because it "owes no general tort duty to another not to interfere with performance of the contract; its duty is simply to perform the contract according to its

-27-

terms." Id.  The court was concerned that allowing a tort claim for conspiracy would transform simple a contract breach into a tort, which would allow recovery of tort damages and otherwise blur the line between contract and tort claims.  Id., 7 Cal.4th at 514-18, 28 Cal.Rptr.2d at 480-83.  The court did not doubt that the same conduct might give rise to both contract and tort claims, including conspiracy-based claims, but it rejected conspiracy as a means of creating a tort claim where none would otherwise exist. Id., 7 Cal.4th at 520 n.8, 28 Cal.Rptr.2d at 484 n.8.

Following this reasoning many of the California Courts of Appeal have held (correctly in this court's view) that because a non-fiduciary has no fiduciary duty he or she cannot be liable for conspiring to breach such a duty.  Berg, 131 Cal.App.4th 802; 32 Cal.Rptr.3d 325; 1-800 Contacts, 107 Cal.App.4th at 592; 132 Cal.Rptr.2d at 808; Everest Investors 8 v. Whitehall Real Estate L.P. XI, 100 Cal.App.4th 1102, 1106; 123 Cal.Rptr.2d 297, 301 (2d Dist. 2002); Kidron, 40 Cal.App.4th at 1597, 47 Cal.Rptr.2d at 768; Younan, 111 Cal.App.3d 498, 169 Cal.Rptr. 478 (non-fiduciary can conspire to commit actual fraud, but not constructive fraud) (discussed with approval in Applied Equipment, 7 Cal.4th at 512, 28 Cal.Rptr.2d at 479).  See also 12 Cal.Jur.3d Civil Conspiracy § 5 (citing authority that, just as a party to contract cannot be liable for conspiracy to interfere with same, a non-employer third party cannot be liable for conspiracy wrongfully to terminate employment).

Other decisions agree with this as a general rule, but they state or imply that Doctors' Co. establishes an exception -- an affirmative basis for liability rather than a narrow exception to

-28-

the agents' immunity rule. Under this approach one who is legally incapable of committing the underlying tort can nevertheless be liable for conspiracy if he or she actively participated in the fiduciary's breach of duty in furtherance of his or her own financial gain. See Pierce v. Lyman, 1 Cal.App.4th 1093, 1104 & n.7; 3 Cal.Rptr.2d 236, 242 & n.7 (2d Dist. 1991) (attorneys for former trustees had no fiduciary relationship with beneficiary, but could be liable for conspiring to violate fiduciary duty "if the attorney was acting in furtherance of his or her own financial gain"); In re County of Orange, 203 B.R. 983, 997-1000 & n.15 (Bankr. C.D. Cal. 1996) (same, for non-fiduciary provider of financial rating services), rev'd in part on other grounds, 245 B.R. 138 (C.D. Cal. 1997); Atascadero, 68 Cal.App.4th at 464 n.14, 80 Cal.Rptr.2d at 342 n.14 (same, for non-fiduciary financial broker and advisor); Wolf v. Mitchell, Silberberg & Knupp, 76 Cal.App.4th 1030, 1033, 1039-42; 90 Cal.Rptr.2d 792, 793, 797-99 (2d Dist. 1999) (same, for trustee's attorney).

This split has been recognized but not resolved by the more recent cases. See Everest, 100 Cal.App.4th at 1108-09, 123 Cal.Rptr.2d at 302-03 (acknowledging "existence of language in several Court of Appeal opinions that is not entirely reconcilable with our analysis" and suggesting that "[p]erhaps it is time for the [California] Supreme Court to revisit these issues."); 1-800 Contacts, 107 Cal.App.4th at 592, 132 Cal.Rptr.2d at 808 (following Everest but acknowledging "contrary understanding" by certain decisions).

The court believes that a non-fiduciary cannot conspire to breach a fiduciary and that "the exception for conduct undertaken

-29-

in pursuit of a personal interest or advantage applies <u>only</u> to the agent's immunity rule." <u>1-800 Contacts</u>, 107 Cal.App.4th at 592, 132 Cal.Rptr.2d at 808 (emphasis added). The alternative approach would "effectively swallow up the rule" -- it would permit conspiracy for essentially any claim, regardless whether the alleged conspirator is legally capable of committing the underlying tort -- "because personal interest or advantage is generally the impetus or goal of conspiratorial conduct." <u>Id</u>.

Cassel attempts to distinguish <u>Everest</u> and <u>1-800 Contacts</u> by arguing that the non-fiduciaries in those cases were former agents who had lost their immunity and were not actual recipients of the fruits of the breach of trust. That is inaccurate. The non-fiduciary in <u>Everest</u> was a purchaser, not an agent, who allegedly conspired with fiduciaries of a limited partnership to purchase its assets at significantly less than fair market value, thereby receiving the fruits of the alleged breach of trust. <u>Everest</u>, 100 Cal.App.4th at 1104, 123 Cal.Rptr.2d at 299. In <u>1-800 Contacts</u> the non-fiduciary was an attorney who never had an attorney-client or other agency relationship with the plaintiff and he too had allegedly obtained the fruits of the breach of trust -- his "personal gain" was "to undertake a profitable legislative consulting business" based on the use of information allegedly obtained through the plaintiff's former in-house counsel who had shared that information in violation of his fiduciary duties. <u>1-800 Contacts</u>, 107 Cal.App.4th at 591, 132 Cal.Rptr.2d at 807. Cassel's attempts to distinguish these cases are unavailing.

For all of these reasons the court agrees with Defendants that Ted's sons, who were not fiduciaries (at least at the time of

-30-

1  the alleged breach, see footnote 6 above), could not conspire to
2  breach any fiduciary duties owed by the Successor Trustees.
3  <u>Kidron</u>, 40 Cal.App.4th at 1597, 47 Cal.Rptr.2d at 768.  That does
4  not mean that Cassel's claim for aiding and abetting a breach of
5  fiduciary duty is barred.  In the court's view, both the letter
6  and the spirit of <u>Applied Equipment</u> are consistent with
7  recognizing aiding and abetting a breach of fiduciary duty as a
8  separate tort claim from conspiracy to breach a fiduciary duty.
9       The differences between conspiracy and aiding and abetting
10 are not merely semantic.  A conspiracy exposes the conspirators to
11 vicarious liability for all acts committed pursuant to an
12 agreement to commit a tortious act or acts, "irrespective of
13 whether or not he was a direct actor and regardless of the degree
14 of his activity."  <u>Applied Equipment</u>, 7 Cal.4th at 511, 28
15 Cal.Rptr.2d at 478 (citations omitted).  <u>See also</u> Haning,
16 Flahavan, and Kelly, <u>Cal. Pract. Guide Pers. Inj.</u> Ch.2-E at
17 ¶¶ 2:347-2:369 (Rutter Group, 2007) ("<u>CPG Pers. Inj.</u>"); <u>Neilson</u>,
18 290 F.Supp.2d at 1134-35.  In contrast aiding and abetting
19 requires a substantial causal connection between the culpable
20 conduct of the aider and abettor himself or herself and the harm
21 to the plaintiff, and although it requires no advance agreement it
22 does require actual knowledge that the primary wrongdoer's conduct
23 constitutes a breach of duty.  <u>CPG Pers. Inj.</u> at ¶ 2:369.6;
24 <u>Neilson</u>, 290 F.Supp.2d at 1134-35.  These differences have led
25 several courts to recognize that a non-fiduciary can aid and abet
26 a breach of fiduciary duty.  <u>Neilson</u>, 290 F.Supp.2d at 1118-29,
27 1132-37; <u>Casey v. U.S. Bank National Ass'n</u>, 127 Cal.App.4th 1138,
28 1145 n.2, 26 Cal.Rptr.3d 401, 406 n.2 (4th Dist. 2005) ("aiding

-31-

and abetting a tort differs fundamentally from liability based on conspiracy to commit a tort" for the reasons "articulated so well in the Neilson opinion"); Berg, 131 Cal.App.4th at 823, 835 & n.10; 32 Cal.Rptr.3d at 339-40, 349 & n.10 (following Neilson); Atascadero, 68 Cal.App.4th at 460-70 & n.14, 80 Cal.Rptr.2d at 340-46 & n.14 (non-fiduciary agent cannot conspire to breach duty owed by fiduciary, but non-fiduciary can induce, aid, or abet breach of fiduciary duty, disagreeing with Kidron to the extent it "purports to establish an absolute rule barring any cause of action against a nonfiduciary for aiding and abetting a breach of fiduciary duty . . .") (emphasis added). But see County of Orange, 203 B.R. at 999 ("I see no reason for treating the vicarious tort of aiding and abetting breach of a fiduciary duty differently from that of conspiracy to breach a fiduciary duty"); 1-800 Contacts, 107 Cal.App.4th at 588 & n.15, 132 Cal.Rptr.2d at 805 & n.15 (plaintiff acknowledged that its claim for inducing breach of fiduciary duty was properly equated to claim for conspiracy to breach fiduciary duty).

The different elements of conspiracy to breach a fiduciary duty and aiding and abetting such a breach persuade the court that Cassel's proposed amendment is not futile. The dangers that Applied Equipment sought to avoid are not present: if there are any tort damages they will arise because all the substantive elements of a tort have been satisfied -- the tort of aiding and abetting a breach of fiduciary duty -- not because a contract claim has been bootstrapped into a tort claim. As stated by Neilson:

> [T]he court concludes that the analysis set

-32-

> forth in <u>Applied Equipment</u> does not mandate a
> finding that California law implicitly requires
> that a defendant owe plaintiffs a duty before she
> can be held liable for aiding and abetting.

<u>Neilson</u>, 290 F.Supp.2d at 1134-36.

The court expresses no view whether Ted's sons did in fact aid and abet any breach of fiduciary duty by the Successor Trustess. The court must accept Cassel's allegations as true for purposes of his motion to amend. Because Ted's sons have not established that Cassel's proposed amendment is futile the court will grant Cassel's motion for leave to amend the Supplemental Complaint.

IV. <u>Conclusion</u>

Amended orders are being issued concurrent with this Memorandum Decision reflecting the disposition of Cassel's Partial MSJ, Defendants' MTD, and Cassel's motion to amend the Supplemental Complaint. No judgment is being issued at this time. Cassel has not requested a ruling on punitive or consequential damages or attorneys' fees in his Partial MSJ, but neither have Defendants established that those damages are barred as a matter of law. Those issues, the newly added claim for aiding and abetting breach of trust, and other matters remain to be resolved.

The court will hold a status conference on July 2, 2007, at 1:30 p.m.

** END OF MEMORANDUM DECISION **

-33-

COURT SERVICE LIST

John Poppin, Esq.                          for Robert M. Cassel
Law Offices of John Poppin
130 Sutter St. 7th Fl.
San Francisco, CA 94104

Matthew J. Shier, Esq.                     for Robert M. Cassel
Pinnacle Law Group LLP
425 California St., Suite 1800
San Francisco, CA  94104

Neil R. Bardack, Esq.                      for Theodore M. Kolb,
Naz Roudiani, Esq.                         Ruth Globerson, Felix
McQuaid Bedford & Van Zandt LLP            Kolb, Jonathan Kolb,
221 Main St., 16th Floor                   Richard Kolb, and
San Francisco, CA  94105                   Douglas Kolb

Iain A. Macdonald, Esq.                    bankruptcy counsel to
Law Offices of Iain A. Macdonald          Theodore M. Kolb
Two Embarcadero Center, Suite 1670
San Francisco, CA  94104

Robert A. Franklin, Esq.                   for Uecker & Assoc's, Inc.
Murray & Murray
19400 Stevens Creek Blvd, Ste 200
Cupertino, CA 95014

-34-